**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**CLEATUS RAY MCKENZIE**                                                        **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 3:22-cv-164-JMV**

**COMMISSIONER OF
SOCIAL SECURITY**                                                        **DEFENDANT**

<u>**ORDER AFFIRMING COMMISIONER'S DECISION**</u>

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's denial of his application. The parties have consented to entry of final judgment by the United States Magistrate Judge, with any appeal to the Court of Appeals for the Fifth Circuit. Having considered the record, the administrative transcript, the briefs of the parties, and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and should be **AFFIRMED**.

**Statement of the Case**

Cleatus Ray Mckenzie Jr., the Plaintiff and claimant herein, was closely approaching advanced age at all relevant times. (Tr. 28). The ALJ ruled that Plaintiff is unable to perform his past relevant work as a data communication technician. (Tr. 28). The ALJ found Plaintiff to have the following severe impairments: morbid obesity, lumbar degenerative disc disease, diabetes mellitus, and adjustment disorder. (Tr. 16).

**The ALJ's Decision**

After considering all the evidence of record, the ALJ rendered his decision on December 16, 2021, finding that Plaintiff was not disabled through the date he issued the decision (Tr. 10-30). The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period (Tr. 16). At step two, the ALJ found that Plaintiff had severe impairments, including morbid obesity, lumbar degenerative disc disease, diabetes mellitus, and adjustment disorder (Tr. 16). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the listings in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt, P, App. 1 (Tr. 18-20). Next, the ALJ found that Plaintiff had the RFC to perform light work, except:

> he cannot climb ladders, ropes, scaffolds; can occasionally climb ramps and stairs; can occasionally balance, crouch, stoop, kneel, crawl; cannot work at unprotected heights or with dangerous machinery; would be limited to jobs involving simple and routine tasks where changes in the workplace setting would be infrequent and gradually introduced; can have occasional interaction with supervisors, coworkers, and the general public.

(Tr. 20).

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a data communication technician and land surveyor (Tr. 28). However, at step five, the ALJ found that Plaintiff perform other jobs in the national economy, such as marker, garment sorter, and office helper (Tr. 29). Accordingly, the ALJ found that Plaintiff was not under a disability as defined in the Act from April 15, 2019, the alleged disability onset date, through December 16, 2021, the date of the ALJ's decision.

## Analysis

**(1) While the ALJ does appear to have erred in his assessment of Plaintiff's chronic fatigue syndrome (CFS), such error was, in any event, harmless. The ALJ's decision is supported by substantial evidence. And, even had the ALJ found an MDI of CFS, it would not have changed his RFC.**

In this case, the ALJ found that the evidence was insufficient to support either a severe

2

impairment of chronic fatigue syndrome ("CFS"), a medically determinable impairment ("MDI") of CFS, or even a diagnosis of CFS. Plaintiff contends this was error, and points out that in support of these findings the ALJ relied on the alleged absence of objective clinical findings, as the following quote from the ALJ decision illustrates:

> For the purposes of Social Security disability evaluation [of CFS], one or more of the following medical signs clinically documented over a period of at least 6 consecutive months help establish the existence of a medically determinable impairment of CFS: palpably swollen or tender lymph nodes on physical examination; nonexudative pharyngitis; persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points; or other signs such as frequent viral infections with prolonged recovery; sinusitis; ataxia; extreme pallor; and pronounced weight change. Of those CFS symptoms recognized by the Social Security Administration, the objective clinical findings in the medical evidence of record fails to support CFS as a diagnosis for purposes of disability determination.

(Tr. 17).

Concerning this recitation, the Plaintiff argues that SSR 14-1p, which is the Ruling for Evaluating Cases Involving CFS, actually goes further to state, "Under the CDC case definition, a physician can make the diagnosis of CFS based on a person's reported symptoms alone after ruling out other possible causes for the person's symptoms. However, as mentioned, statutory and regulatory provision require that for evaluation of claimant of disability under the Act, there must also be medical signs *or laboratory findings*." [emphasis added] And, regarding the laboratory findings, the rule explains:

*Laboratory findings*. At this time, we cannot identify specific laboratory findings that are widely accepted as being associated with CFS. However, *the absence of a definitive test does not preclude our reliance upon certain laboratory findings to establish the existence of an MDI in people with CFS.* While standard laboratory test results in the normal range are characteristic for many people with CFS, and they should not be relied upon to the exclusion of all other clinical

evidence in decisions regarding the presence and severity of an MDI, *the following laboratory findings establish the existence of an MDI in people with CFS:*

> A) *An elevated antibody titer to Epstein-Barr virus (EBV) capsid antigen equal to or greater than 1:5120, or early antigen equal to or greater than 1:640;*
>
> B) *An abnormal magnetic resonance imaging (MRI) brain scan;*
>
> C) Neurally mediated hypotension as shown by tilt table testing or another clinically accepted form of testing; or
>
> D) Any other laboratory findings that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case record (for example, an abnormal exercise stress test or abnormal sleep studies, appropriately evaluated and consistent with the other evidence in the case record). [emphasis added]

In this case, as the Plaintiff argues, he had at least two of the laboratory findings that the rule states "establish the existence of a medically determinable impairment in people with CFS." Namely, an abnormal magnetic resonance imaging (MRI) brain scan taken July 31, 2021, reflecting punctate acute infarction of the right occipital lobe (Tr. 511); and an elevated antibody titer to Epstein-Barr virus (EBV) capsid antigen equal to or great than 1:5120, or early antigen equal to or greater than 1:64. His medical evidence establishes this claimant had a positive and abnormal (1.512) result which was noted to be suggestive of recent or active infection (Tr. 375) and an EBV (Epstein Barr Virus) was detected with a high reading of 237, where anything greater than 18 is outside of normal range. (Tr. 559). And, that the interpretative for his RMSF Igm Titer was <1.64. (TR 560).

Plaintiff also notes that while some of the aforementioned lab work (that at Tr. 559-60)

was performed on May 13, 2021, the fax stamp on the medical records demonstrates that Plaintiff's counsel did not receive a copy of this evidence until October 8, 2021, (Tr. 559), which is after the state agency (non-examining) reviews on September 17, 2020 (Tr. 72) and July 20, 2021 (Tr. 79). Therefore, Plaintiff argues not only did the ALJ never mention the relevancy of laboratory findings in evaluating CFS for disability purposes——none of the state agency examining or non-examining medical professionals upon whom the ALJ relied would have had access to these results or the abnormal MRI. Consequently, Plaintiff asserts the ALJ should have ordered an opinion from a medical expert to resolve any conflicts or ambiguities as to whether Plaintiff suffers an MDI from Chronic Fatigue Syndrome and the medical manifestations thereof.

In response, the Commissioner did not address the failure to reference the relevance of laboratory and MRI findings in assessing whether claimant had a MDI of CFS, appearing to rely instead on a number of other findings, including the ALJ's repeated recitation that despite his concluding that Plaintiff did not have a MDI of CFS, he nevertheless considered Plaintiff's complaints of fatigue in formulating his RFC. The Commissioner also argues that even assuming plaintiff has an MDI of CFS, he must have had it since 1991 since he has been complaining of fatigue since then. And, since claimant was able to work until mid-2019, this is evidence he could continue to do so during the relevant period (May 2019 to December 2021). Most notably—and persuasively in the Court's view—the Commissioner notes that the ALJ properly found that the consultive basic physical exam performed on August 28, 2020, did not support a diagnosis of CFS, including, importantly, any objective findings to support any functional limitations based thereon. The notes from that examination reveal that:

> Dr. Callaghan ultimately concluded that Plaintiff's physical examination was normal, as he had full range of motion in the cervical, thoracic, and lumbar spine, as well as all extremities; he had negative straight leg raising; he was alert and oriented x3 with normal gait and speech; his motor strength was 5/5 in the upper

and lower extremities bilaterally with no signs of atrophy; his sensory examination was normal; and he had good grip strength bilaterally. These findings do not support a diagnosis of CFS.

(Tr. 462).

Moreover, the Commissioner notes—and the Court agrees—that the record is plain that the psychological evaluations do not support any limitations beyond those accounted for in the RFC.

Consequently, the Commissioner argues that even if the ALJ had considered Plaintiff's CFS as an MDI, he would not have placed greater limits on the RFC. The undersigned finds this argument is highly persuasive. As noted, the ALJ repeatedly explained that he considered, in formulating the RFC, Plaintiff's complaints of fatigue. The ALJ also carefully noted that, despite the number of medical statements offered by claimant's treater, they all lacked any objective findings to support the extreme functional limitations assigned by that physician. Moreover, these proposed extreme limitations were either explicitly disavowed by the claimant himself at the hearing, conflicted with other of the treater's own proposed limitations, or were in conflict with actual objective medical findings reported by the consultive physical and psychological examiners. The court also notes that while the state non-examiners did not apparently have the reports evidencing lab findings at Tr. 559, they apparently did have similar lab results from earlier at Tr. 375. In short, even if the ALJ should have—based on the lab reports—found an MDI of CFS, it is plain that the ALJ would not, on this medical record, have reached a different RFC based on such finding.

**(2)  The ALJ properly considered Plaintiff's alleged medication side effects.**

Plaintiff argues that the ALJ did not sufficiently account for his alleged medication side effects, but as the Commissioner argues, in the instant case, the ALJ asked Plaintiff during the

6

administrative hearing whether there were any side effects from the medication he took, to which Plaintiff responded there where none (Tr. 53). The ALJ also considered that in Dr. Merigian's (Plaintiff's treater's) October 2021 medical source statement, the doctor stated that Plaintiff used narcotic and other medications, that decreased his mental acuity (Tr. 25, 573). However, the ALJ observed that the record does not appear to show that Plaintiff reported any alleged side effects to medical providers during the relevant period (Tr. 25). *See Hollis v. Bowen*, 83 F.2d 1378, 1384 (5th Cir. 1990) (ALJ properly found claimant's complaints of ineffective medication not credible where alleged ineffectiveness was not told to treating physician(s)). Accordingly, the undersigned finds the Commissioner was correct that there was no reason for the ALJ to include any limitations due to medication side effects in the RFC assessment since they were apparently not significant enough to report to his doctors. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (ALJ not required to include limitations not supported in the record).

**(3) The ALJ properly considered all the medical evidence as it relates to Plaintiff's incontinence and neuropathy.**

Plaintiff also asserts that the ALJ did not consider all of the evidence of record because he did not find limitations associated with Plaintiff's incontinence and neuropathy. But, the ALJ specifically addressed Plaintiff's urinary incontinence and neuropathy in the body of the decision. He noted Plaintiff did not report having incontinence during the administrative hearing, nor does the record show that he complained about the condition at any other time throughout the relevant period. *See, Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (finding ALJ was not required to consider impairment that claimant did not allege in his disability applications, or before the ALJ). Consequently, the ALJ determined that the condition was not expected to last more than twelve (12) months and does not cause any work-related limitations.

7

The ALJ noted that Dr. Merigian diagnosed Plaintiff with peripheral neuropathy in August 2019, but the medical record does not reveal that an electromyography or nerve conduction study was conducted to establish the condition as a medically determinable impairment (Tr. 23, 569). The medical evidence is also devoid of any evidence that shows Plaintiff had diminished reflexes or signs of sensory impairment consistent with progressive neuropathy (Tr. 23). In addition, the ALJ noted there is no evidence that Plaintiff had any difficulty handling objects or ambulating due to neuropathic symptoms (Tr. 23). Consultative examiner, Dr. Callaghan, also noted that Plaintiff's sensory examination was intact and did not reflect evidence of radiculopathy or neuropathy (Tr. 23). Plaintiff even testified that prior to 2011, a nerve conduction study was performed, which was negative for peripheral neuropathy (Tr. 56) Therefore, there is no error as to this issue, and this finding was supported by substantial evidence.

**(4) The ALJ did not err when he found the opinion of the State Agency Medical Consultants persuasive and did not err in his consideration of Plaintiff's Covid-19.**

The court finds that while it is—as is almost always the case as a practical matter—that some medical evidence comes in after state agency medical consultants perform their reviews and the date of the ALJ decision, there is no regulatory limit on how much time may pass between a report and the ALJ's decision in reliance on it. *Chandler v. Com'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). And, in this case the ALJ did not rely solely on the opinions of the state agency medical consultants to formulate his RFC finding. Rather, he considered all the evidence provided in the record, including evidence submitted after the state agency medical consultants rendered their opinions. In this case, after considering the record as a whole, the ALJ

properly found that the state agency opinions were persuasive because they were consistent with the objective medical findings overall (Tr. 26)

      The ALJ thoroughly explained his reasoning for finding the opinions of Cynthia Vaughn, M.D., and Madena Gibson, M.D., persuasive as consistent with the objective medical findings as a whole (Tr. 26). Dr. Vaugh and Dr. Gibson both agreed that Plaintiff could perform light work, but could never climb ladders, ropes, or scaffolds; and he could occasionally balance, stoop, kneel, crouch, and crawl (Tr. 69, 77). When Dr. Gibson reviewed the evidence, which included the March 2021 medical source statement from Dr. Merigian, she determined Plaintiff should also avoid moderate exposure to unprotected heights or with dangerous machinery (Tr. 77). Notably, both medical consultants also considered Plaintiff's alleged chronic fatigue symptoms when they assessed his limitations (Tr. 65-66, 76-77). The ALJ further explained that the limitations he assessed related to all Plaintiff's impairments, both severe and nonsevere, and his subjective complaints, to the extent they were consistent with the objective medical findings (Tr. 26)

      Finally, Plaintiff claims that the state agency opinions did not, given when they were performed, take into consideration his later treatment for COVID 19. Pl.'s Br. at 8. However, as the commissioner points out, the ALJ did consider Plaintiff's COVID-19 diagnosis (Tr. 16). Specifically, the ALJ found that the medical record does not reflect any evidence of COVID-19 complications lasting, or expected to last, 12 or more consecutive months (Tr. 16). *See* 20 C.F.R. § 404.1509 (unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months). Lastly, the ALJ specifically recognized that Plaintiff's treating physician, Dr. Merigian, opined that COVID-19 had "taken all of the wind out of his sails" (Tr. 16, 581), but the ALJ recognized that there is no evidence

provided in the record that Plaintiff suffered any COVID-19 caused work-related limitations that would be expected to last 12 or more months. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (providing the principle that a claimant must show how an impairment caused functional limitations).

**Conclusion**

For the foregoing reasons, this case is **AFFIRMED**.

**THIS**, the 7th day of March, 2023.

/s/ Jane M. Virden
United States Magistrate Judge
